UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JENNIFER C.,[1]

      **Plaintiff,**

  v.                                        **Civil Action 3:23-cv-72**
                                                **Judge Michael J. Newman**
**COMMISSIONER OF SOCIAL**            **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jennifer C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply Memorandum (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                **I.    BACKGROUND**

Plaintiff protectively filed her application for Title II disability insurance benefits on April 23, 2019, alleging that she became disabled on March 15, 2019. Plaintiff subsequently

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

amended the claim to a closed period of disability from March 15, 2019, through November 16, 2020. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephone hearing on June 17, 2021, and issued an unfavorable determination on July 23, 2021. That unfavorable determination became final on August 2, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions of error: (1) the ALJ erred in failing to find that Plaintiff suffered from any severe mental impairments at step two of the sequential evaluation process and by failing to include any mental limitations in the residual functional capacity; and (2) the ALJ erred by substituting his lay judgment for that of the treating, examining, and reviewing mental health professionals. (Pl.'s Statement of Errors 5–13, ECF No. 9.) The undersigned disagrees as to both contentions of error.

## II.     THE ALJ'S DECISION

On July 23, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 36–56.) At step one of the sequential evaluation

process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the relevant closed period of March 15, 2019, through November 15, 2020. (*Id.* at 38.) At step two, the ALJ found that Plaintiff had the severe impairments of venous insufficiency, peripheral neuropathy, osteoarthritis, degenerative disc disease, and mild obesity. (*Id.* at 39–44.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 44.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to no climbing of ladders, ropes, or scaffolds with frequent stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She should avoid concentrated exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle.

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

(*Id.*) The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff was capable of performing her past relevant work as a certified public accountant as generally, but not actually, performed. (*Id.* at 54.) The ALJ also concluded, based on the VE's testimony, that there are other jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could also perform during the relevant period, such as marker, routing clerk, and order caller. (*Id.* at 54–55.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 56.)

### III.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff raises two issues in her Statement of Errors (ECF No. 9): (1) the ALJ erred in failing to find that Plaintiff suffered from any severe mental impairments at step two of the sequential evaluation process and by failing to include any mental limitations in the residual functional capacity; and (2) the ALJ erred by substituting his lay judgment for that of the treating, examining, and reviewing mental health professionals. (Pl.'s Statement of Errors 5–13, ECF No. 9.) The undersigned considers each contention of error in turn.

**A.   The ALJ appropriately considered Plaintiff's mental impairments at step two and in crafting the RFC.**

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are

5

'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

However, "the fact that some of a claimant's impairments were not deemed to be severe at step two is legally irrelevant where other impairments are found to be severe." *Emard*, 953 F.3d at 852 (cleaned up); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence"). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e). *See also Pompa*, 73 F. App'x at 803 (rejecting the plaintiff's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that plaintiff had at least one severe impairment and considered all of the plaintiff's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual

6

functional capacity.") Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, the ALJ determined that Plaintiff has one or more severe impairments, but declined to include Plaintiff's mental health impairments among them. (R. 39.) The question now before the Court is whether the ALJ appropriately considered any limiting effects caused by Plaintiff's mental impairments in assessing Plaintiff's RFC. The undersigned concludes that he did. The administrative decision reflects that the ALJ considered in detail Plaintiff's self-reports, her psychologist's and psychiatrist's treatment records, a consultative psychological examination,

7

and the state agency reviewers' opinions, and sufficiently explained why mental limitations were not warranted, in crafting the RFC.

The ALJ first acknowledged Plaintiff's contention that she has mental impairments, including anxiety and depression, that are "severe." (R. 39.) However, the ALJ went on to find at step two that Plaintiff has no more than a mild limitation in any of the four "paragraph B" criteria[4] of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 39–43.) As grounds, the ALJ noted that the record "demonstrates significant complaints but adequate mental functioning with only conservative treatment." (*Id.* at 39.) The ALJ summarized Plaintiff's self-reports of depression, anxiety, anger mood swings in which she "kind of black[s] out," significant personal issues related to a number of relatives passing away while she was caring for them in the years before she stopped working, her trouble with concentration, crying spells, needing to leave work early several times due to her mental health symptoms, isolating herself in her office, trouble sleeping, and chest pain that accompanied her anxiety. (*Id.*)

The ALJ also summarized Plaintiff's treatment notes, which reflect that the claimant was diagnosed with anxiety by July 2014 and that, in February 2019, she reported to her internist gradually worsening symptoms of depression and anxiety, that she intended to look for a new job in a couple months, and that she was at that time taking Trazodone for depression only on an as-needed basis and she was cutting down on Lorazepam for anxiety. (R. 40, citing R. 459–60.) In June 2019, Plaintiff reported that she chose to leave her job after the management of her company changed to a new owner and that she quit her job because she found the conditions to

---

[4] The four aspects of mental functioning are referred to as the "paragraph B" criteria, as they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

be "unreasonable" after her company was sold. (*Id.*, citing R. 553, 807.) Plaintiff's mental status examination in June 2019 reflected adequate mental functioning (including excellent fund of knowledge and intact insight, judgment, recent and remote memory, attention, concentration, and language) despite her depressed and anxious mood and affect with some tangential thought processes. (*Id.*, citing R. 811.) July 2019 Therapy notes reflected similar reported symptomology with adequate mental functioning, including adequate concentration with only occasional lapses in attention span, despite appearing anxious and sad. (*Id.*, citing R. 564.) Plaintiff also stated in a June 2019 function report that she worked on taxes and probate matters during the day. (R. 41, citing R. 297.)

In a July 2019 consultative examination by Dr. Robert Kurzhals, the ALJ noted that Plaintiff continued to report significant depression and anxiety, even suggesting she was afraid she would hurt somebody after her employer sold the business she worked for. (R. 40, citing R. 574.) Plaintiff stated she expected she would have lost her job if she stayed because "it was very obvious [she] didn't mean anything to the new group" compared to her "great" relationship with the previous owner. (R. 42, citing R. 574.) Nevertheless, she reported generally relating adequately to coworkers and supervisors and got along well with her husband and two adult children and two or three friends that she saw once a week. (*Id.*) She also indicated she had no difficulty understanding and remember instructions until the past year and she reported that she read well. (R. 41, citing R. 574–75.) The examiner noted that she was able to understand and follow simple instructions, though some had to be repeated. Her level of intellectual functioning was estimated to be within the average range. On examination, the claimant remembered three of three items without interference and two of three items both with interference and with a five-minute delay. She recalled seven digits forward and four digits backward. She completed serial

9

7s and solved all addition, subtraction, multiplication, and division problems without error. (*Id.*, citing R. 576.) Although the consultative examiner opined that concentration and attention were below average, as some questions had to be repeated and she struggled on some tasks that required concentration, and that "there is limitation in" the areas of understanding, carrying out, and remembering instructions and concentration and persisting in work-related activity at a reasonable pace (R. 577), the ALJ concluded that Plaintiff's testing performance "suggested better abilities to understand, remember, and apply information" and "better concentration" "tha[n] indicated by the examiner's report." (*Id.* at 41, 42.) The examiner also opined that "there is limitation in" maintaining effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public, and that "there is significant limitation in" dealing with normal pressures in a competitive work setting. (R. 577.)

The ALJ noted that subsequent treatment notes "reflect improvement with the addition of medications within only a few months of the alleged onset date." (R. 40.) Plaintiff last saw her psychologist in January 2020, when, although her treatment goals were not fully met, she was "much improved." (*Id.*, citing R. 752.) February 2020 primary care notes reflect a self-reported PHQ-9 score of five, indicating only mild depression. (*Id.*, citing R. 890.) Psychiatry notes in February 2020 reflect that Abilify "really works" for her, helps her mood, and allows her to smile, and that her racing thoughts, disorganization, forgetfulness, and distraction had improved. She further reported that she was more motivated and making to-do lists to get things done. (R. 41, citing R. 768.) Additionally, from February 2020 through June 2020, Plaintiff's wheelchair-bound mother-in-law was living with her for half the week and needed total care. (R. 43, citing R. 756.)

10

Ultimately, the ALJ concluded that Plaintiff's mental impairments did not meet the 12-month durational requirement for "severe" impairments under 20 C.F.R. § 404.1509. (R. 39.) The ALJ explained, "while the claimant may have had an acute mental breakdown around the alleged onset date, the record demonstrates that it did not persist at a 'severe' level for a continuous period of twelve months or more." (*Id.*) The undersigned finds no error in the ALJ's step two analysis, which is supported by the above-noted substantial evidence.

The undersigned similarly finds no error in the ALJ's RFC. In explaining why no mental RFC limitations were warranted, the ALJ first summarized Plaintiff's activities of daily living, including caring for her mentally ill adult daughter and wheelchair-bound mother-in-law, attending to many household chores, driving and going out alone, shopping online and in stores, golfing, and socializing with friends. (R. 50–51.) The ALJ then considered the opinions of the state agency psychological reviewers, who opined that Plaintiff had mild to moderate limitations in the paragraph B criteria and limited Plaintiff to one-to-three step simple tasks, without fast pace or strict time requirements, for which instructions could be repeated, and for which changes in work setting should be explained in advance. (R. 52, citing R. 117–19, 128–30) The state agency reviewers also limited Plaintiff to superficial contact with coworkers and supervisors and occasional interaction with the public. (*Id.*) The ALJ found these opinions minimally persuasive, stating that "[w]hile the claimant may have initially had the restrictions opined by [the state agency reviewers], such limitations did not last for twelve months" and citing record evidence summarized above in relation to the ALJ's step two analysis. (*Id.*)

The ALJ also rejected the opinion of Gary Dixon, Plaintiff's psychologist, that "it is clear that [Plaintiff] qualifies for benefits due to her multiple disabilities." (R. 52, citing R. 562.) The ALJ noted that Mr. Dixon did not adequately explain his conclusion and, as he referenced only

11

physical issues in his letter ("a variety of physical and chronic pain issues"), it appears that Mr. Dixon based his conclusion on Plaintiff's physical impairments, which are outside his area of expertise. (*Id.*) Further, Mr. Dixon's treatment notes "reflect no more than occasional lapses in attention span with adequate concentration, intact memory and abstraction, fair impulse control, and no more than minimal impairments in insight and judgment, suggesting an ability to perform at least some work activity contrary to Mr. Dixon's opinion." (*Id.* at 53.)

For reasons discussed above, the ALJ also found the opinion of Dr. Robert Kurzhals, the psychological consultative examiner, not persuasive. That is, although Dr. Kurzhals opined that Plaintiff had some limitations in all paragraph B criteria with substantial limitations dealing with normal pressures in a competitive work setting, the "objective findings reported by Dr. Kurzhals suggested better functioning than opined." (*Id.*)

Finally, the ALJ also noted that several GAF scores appear in the record, but found any opinion intended by those GAF scores to not be persuasive. (*Id.*) The ALJ explained that "GAF scores reflect the claimant's functioning at a single point in time, and they do not give any indication of specific mental limitations." (*Id.*)

In sum, although the ALJ did not include any mental limitations in Plaintiff's RFC, he thoroughly considered the mental health evidence of record and explained his reasons for declining to adopt any opined limitations. The undersigned is therefore unpersuaded that remand is warranted.

**B.     The ALJ did not improperly substitute his own lay opinion for that of the relevant mental health professionals.**

Plaintiff further argues that the ALJ substituted his own lay opinion for that of medical experts. (Pl.'s Statement of Errors 11–13, ECF No. 9.) The undersigned disagrees. The ALJ, not medical sources, has the final responsibility for deciding issues like residual functional capacity.

20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.") The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their supportability, with reference to objective medical evidence and supporting explanations, and their consistency with other medical and non-medical source evidence. 20 C.F.R. § 1520c(c)(1)–(2). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Further, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff "contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong").

Contrary to Plaintiff's assertions, the ALJ did not impermissibly use his own opinion instead of the medical opinions in the record. Rather, the ALJ properly considered and weighed the opinions and evidence in the record when crafting the RFC. Accordingly, the undersigned finds the RFC is supported by substantial evidence.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE